IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRAVIS WILLIAMS,<br><br>               Plaintiff,<br><br>v.<br><br>E*TRADE FINANCIAL,<br><br>               Defendant. | **MEMORANDUM DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 2:17-cv-00887-DN<br><br>District Judge David Nuffer |

      In this action, Plaintiff Travis Williams seeks relief under the Family and Medical Leave Act ("FMLA") against Defendant E*TRADE Financial Corporation ("ETrade"). To this end, he has filed a motion for summary judgment on the issue of liability.[1] ETrade has also filed a motion for summary judgment on the issue of liability.[2] Based on the undisputed material facts, Williams is entitled to judgment as a matter of law and ETrade is not. Accordingly, Williams's motion is GRANTED and ETrade's is DENIED.

---

[1] Plaintiff's Motion for Summary Judgment ("Williams's Motion"), docket no. 28, filed February 15, 2019; *see* Defendant E*Trade Financial Corporation's Opposition to Plaintiff's Motion for Summary Judgment ("ETrade's Response"), docket no. 35, filed March 15, 2019; Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, docket no. 36, filed March 29, 2015.

[2] Motion for Summary Judgment ("ETrade's Motion"), docket no. 29, filed February 15, 2019; *see* Appendix of Evidence in Support of E*Trade Financial Corporation's Motion for Summary Judgment, docket no. 32, filed March 6, 2019; Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, docket no. 34, filed March 15, 2019; Reply Memorandum in Support of Motion for Summary Judgment ("ETrade's Reply"), docket no. 37, filed March 29, 2019.

## TABLE OF CONTENTS

Undisputed Material Facts ...........................................................................................................2

Discussion ...................................................................................................................................12

        Williams was entitled to FMLA leave. ............................................................................14

        An adverse action of ETrade interfered with Williams's FMLA rights.............................15

        ETrade's action was related to the exercise of Williams's FMLA rights. .........................16

Order ...........................................................................................................................................17

## UNDISPUTED MATERIAL FACTS

Based on the record and evidence presented, there is no genuine dispute as to any of the following material facts.

On May 24, 2010, Williams began employment as a "financial services representative" for ETrade.[3] His job entailed answering calls from ETrade customers ordering investment trades.[4] ETrade grants its eligible employees FMLA-protected leave "due to their own serious health condition or to care for a family member with a serious health condition."[5] ETrade contracts with Metropolitan Life Insurance Company ("MetLife") to administer ETrade's FMLA program.[6]

---

[3] Williams's Motion, *supra* note 1, at 2 ¶ 1; Letter from ETrade, docket no. 28-1, dated May 18, 2010.

[4] ETrade's Motion, *supra* note 2, at 5 ¶ 1.

[5] E*TRADE Family and Medical Leave Policy, at 2, docket no. 29-3, dated March 2016; ETrade's Motion, *supra* note 2, at 5 ¶ 3.

[6] Declaration of Courtney Nolde ¶ 7, docket no. 29-2, dated February 14, 2019; Defendant E*Trade Financial Corporation's Response to First Set of Interrogatories ("Discovery Response"), at 10, docket no. 28-11, dated October 1, 2018.

Williams has end-stage renal disease.[7] In February 2014, he requested intermittent FMLA leave related to dialysis treatments.[8] On February 25, MetLife found Williams eligible for FMLA leave and requested that he complete and return a health care provider certification form ("HCPC").[9] Williams did so on or about March 11.[10] On March 17, MetLife formally approved his request for intermittent leave "from February 12, 2014 through February 11, 2015."[11] On or about June 16, he took his first FMLA leave.[12] And in July, he began dialysis.[13]

On January 7, 2015, MetLife asked Williams to have his health care provider recertify his continued need for FMLA leave.[14] Williams did so on January 26.[15] On January 27, MetLife approved his request for intermittent leave again "from January 26, 2015 through January 25, 2016."[16] But by March 2, 2015, he had exhausted his available leave for that period—a fact of which he was not notified until at least March 12.[17] On March 26, Courtney Nolde, ETrade's senior human resources manager, e-mailed Williams regarding this:

> I wanted to follow up with you regarding our conversation we had this afternoon. It was explained to you that as of March 2nd you have exhausted your

---

[7] *See* Deposition of Travis Williams, at 96:22-97:8, 102:23-103:18, 164:13-21, docket no. 29-11, dated January 24, 2019; *see* Health Care Provider Certification ("HCPC 1"), docket no. 28-2, dated March 11, 2014; Health Care Provider Certification ("HCPC 2"), docket no. 35-7, dated January 26, 2015.

[8] ETrade's Motion, *supra* note 2, at 6 ¶ 10; *see* Letter from MetLife, docket no. 28-3, dated February 25, 2014.

[9] *See* Letter from MetLife, *supra* note 8.

[10] *See* HCPC 1, *supra* note 7.

[11] Letter from MetLife, docket no. 29-13, dated March 17, 2014; Williams's Motion, *supra* note 1, at 3 ¶ 4; ETrade's Motion, *supra* note 2, at 6 ¶ 12.

[12] Letter from MetLife, docket no. 29-14, dated June 25, 2014.

[13] ETrade's Motion, *supra* note 2, at 6 ¶ 12.

[14] Letter from MetLife, docket no. 28-5, dated January 7, 2015; Williams's Motion, *supra* note 1, at 3 ¶ 5.

[15] HCPC 2, *supra* note 7; *see* Letter from MetLife, at 1, docket no. 28-7, dated March 12, 2015.

[16] Letter from MetLife, docket no. 28-6, dated January 27, 2015; Williams's Motion, *supra* note 1, at 3 ¶ 6.

[17] Letter from MetLife, *supra* note 15; Letter from MetLife, docket no. 29-4, dated March 12, 2015; Williams's Motion, *supra* note 1, at 3 ¶ 7; ETrade's Motion, *supra* note 2, at 6 ¶¶ 17, 19.

FMLA leave. You are no longer eligible to take time off under the [FMLA], you will be eligible to reapply for FMLA in June 2015. Effective immediately, you are expected to arrive at work on time and work as scheduled. Additionally, if you are to be absent from work you will need to have sufficient Sick Leave and/or Vacation Leave to cover absence from work.

This email does not serve as a verbal warning or any disciplinary action but rather to make sure that you understand what is expected of you going forward. . . .[18]

On April 6, Williams's manager, Nathan van Rij, also e-mailed him about attendance:

This email serves as a verbal warning for failing to meet E*TRADE's attendance guidelines – specifically arriving on time.
. . . You are expected to contact your manager and ETEL if you are delayed in arriving to work. The expectation is that you will arrive to work with sufficient time to log in and be taking calls by the start of your shift. Repeated late arrivals or absences may lead to further disciplinary action up to, and including, termination of employment. We have had conversations in the past regarding attendance, most recently:
On 03/26/2015 you were notified all FMLA leave was exhausted on 03/02/2015.
On 03/31/2015 we again clarified attendance expectations after you were half an hour late, without a call to ETEL on 03/30[.]
After our conversation you were still late every day last week. Logging into CTI at the following times:
> 03/30 – logged into CTI @ 1:03 – 33 minutes late
> 03/31 – logged into CTI @ 12:39 – 9 minutes late
> 04/01 – logged into CTI @ 12:33 – 3 minutes late
> 04/02 – logged into CTI @ 12:35 – 5 minutes late

In addition to arriving on time, you are expected to meet all performance metrics when you are at work. Currently, Work time, Average Handle Time, Adherence and Customer facing time are below expectations.
Based upon our discussion and previous discussions, your inability to consistently be on time for your scheduled shift is below company expectations. In an effort to create an environment for improvement, we have discussed the situation and clarified expectations. Immediate and sustained improvement is required in this area as well as adherence to all job expectations. The need to be on time for your scheduled shift is critical to successful individual performance as well as successful business operations.[19]

---

[18] E-mail from Courtney Nolde, docket no. 29-5, dated March 26, 2015; Williams's Motion, *supra* note 1, at 3 ¶ 8; ETrade's Motion, *supra* note 2, at 7 ¶ 19.

[19] E-mails to and from Nathan van Rij, docket no. 28-9, dated April 6–7, 2015; *see* ETrade's Motion, *supra* note 2, at 9 ¶ 21; Deposition of Travis Williams, *supra* note 7, at 112:12-16.

Williams responded to van Rij's e-mail the next day as follows:

> Wanted to clarify that I did call ETEL on 03/30/2014 and left a message for you around the same time pre-shift.
> I did log in late on more than one day, this was compounded by slow PC start up as we discussed today.
> I will work to improve my other metrics.[20]

Three days later, on April 10, van Rij issued this "Final Written Warning" to Williams for a "trading error":

> The intent of this notice is to inform you that your performance has been below expectations. . . .
> On 04/10/2015 a client requested that you enter an order . . . at limit $14.30, you entered the order at limit $440.00. The client caught the error and tried to correct you on the limit price. You did not catch on to what she was saying. You gave her another quote, but failed to change the order or do another read back prior to submitting. While there was no loss to the Company this presented a large risk to the customer and the Firm.
> . . . .
> . . . Any future error when placing a trade or providing an order read back will result in termination.[21]

On April 22, Nolde issued another warning to Williams regarding his attendance:

> As a follow up to our conversation that took place yesterday we are still in the process of trying to make an accommodation for you due to your current health problems. Once a final decision is made as to what teams we are able to move you to I will follow up with you. . . .
> Also, per our conversation going forward it is expected that you will report to work on time ready to work for your scheduled shift. A verbal warning was delivered to you by your manager Nathan van Rij on April 6, 2015 regarding your attendance which you acknowledged. Since that warning you have been late to work a total of 7 times. I also had a conversation with you on April 13th where you were told you must show up to work on time for your scheduled shift. Due to

---

[20] Emails to and from Nathan van Rij, *supra* note 19. Whether Williams in fact called the ETEL reporting line on April 30, 2015, is immaterial.

[21] Confidential Memorandum, docket no. 29-17, dated April 10, 2015. There is no evidence that Williams ever made any such subsequent error.

your consistent instances of tardiness and the multiple conversations including a verbal warning if you are late again to work this will result in your termination."[22]

In June 2015, Williams renewed his request for intermittent FMLA leave beginning June 22.[23] On June 29, MetLife sent him a letter stating that his "eligibility and . . . reason for leave are being evaluated to determine whether or not this leave request qualifies."[24] "If approved," the letter continued, "your leave of absence will be counted against your annual entitlement under the FMLA and/or other leave categories."[25] The letter instructed him to have another HCPC "completed and returned to MetLife by the beginning of your absence or within 15 calendar days of the date of this letter [i.e., June 29] (whichever is later) or your leave request may be delayed or denied."[26] Thus, according to this letter, Williams had until July 14 to "recertify his FMLA leave."[27]

On July 1, MetLife found Williams eligible for FMLA leave and sent him a letter reminding him to complete and return the HCPC enclosed in its earlier correspondence.[28] "Once we receive the completed documents and your absence begins," the letter explained, "we will complete our determination of whether your request for family and medical leave qualifies under

---

[22] E-mails to and from Courtney Nolde, docket no. 29-7, dated April 22, 2015; *see* ETrade's Motion, *supra* note 2, at 9 ¶ 26.

[23] Letter from MetLife, docket no. 28-13, dated July 1, 2015.

[24] Letter from MetLife, at 1, docket no. 29-8, dated June 29, 2015.

[25] *Id.*

[26] *Id.* at 2; *see* ETrade's Motion, *supra* note 2, at 10 ¶ 29.

[27] ETrade's Motion, *supra* note 2, at 4; *see* ETrade's Response, *supra* note 1, at 6-7 ¶ 12 ("It is Undisputed that MetLife asked [Williams] to recertify his need for medical leave within 15 days.").

[28] Letter from MetLife, *supra* note 23.

the [FMLA], state family and medical leave laws and/or your employer's family and medical leave program."[29]

In accordance with MetLife's instructions, Williams provided the HCPC to his doctor, Arasu Gopinath, on or about July 10 for completion and submission to MetLife.[30] However, on July 20, MetLife sent him a letter stating:

> On June 29, 2015 we sent you a request for information required to certify your need for family and medical leave. You were required to provide complete and sufficient certification information in support of your need for leave within the time specified. To date, we have not received the requested certification information. As a result, your request for leave under the [FMLA], state family medical leave laws and/or your employer's family and medical leave program, as applicable is denied.[31]

Upon receiving this letter, Williams contacted Dr. Gopinath's office and was told "that he was in India for an extended period of time and that was why the Certification had not been returned to MetLife."[32] Williams "then asked Jeanette Ricci, a social worker for Dr. Gopinath's office, to complete the necessary paperwork to certify [his] serious health condition and return it to MetLife."[33] On or about July 27, Ricci did so.[34]

In the meantime, on July 24, van Rij sent Williams another e-mail:

> This email serves as follow up to our discussion after your Performance Improvement Plan (PIP) from 05/22–07/22. The PIP encompassed your struggles with attendance and productivity measures.

---

[29] *Id.*; *see* ETrade's Motion, *supra* note 2, at 10 ¶ 31.

[30] Declaration of Travis Williams ¶ 3, docket no. 28-14, dated February 14, 2019.

[31] Letter from MetLife, docket no. 29-22, dated July 20, 2015; Declaration of Travis Williams, *supra* note 30, ¶ 4; *see* ETrade's Motion, *supra* note 2, at 11 ¶ 32.

[32] Declaration of Travis Williams, *supra* note 30, ¶ 5. Whether Dr. Gopinath had in fact been in India during the time in question is immaterial.

[33] *Id.* ¶ 6.

[34] *Id.* ¶ 7; Health Care Provider Certification, docket no. 29-24, dated July 27, 2015; *see* ETrade's Motion, *supra* note 2, at 11 ¶ 34.

> As we discussed, you continue arriving to work late. During this review period you had at least 4 additional cases of arriving to work late. You are expected to be at work on time ready for his [sic] shift to start. Another occurrence of you arriving to work late will result in termination.
> You are also expected to make meaningful improvements to your productivity . . . .
> *Please reply acknowledging that you understand one more instance of arriving to work late will result in termination.*[35]

On July 29, MetLife informed ETrade's senior benefits analyst, Mary Beth Giroux, that it had received Williams's HCPC on July 27; that he had until August 5 to provide an "extenuating circumstance"; and that, if he failed to do so, his claim could still "be approved with gap from 07.12.15 to 07.26.15: intermittent fmla [sic] of up to 3 days per week AND 1 day per month from 06.22.15 to 07.11.15 and from 07.27.15 to 06.21.16."[36] MetLife wrote a letter to Williams that same day regarding this:

> On July 27, 2015 we received the requested information. However, because the requested information was received after the time specified, additional information is required.
> <u>Action You Are Required to Take:</u>
> To continue processing your request, please provide the reason you or someone on your behalf did not provide the information required to certify your need for family and medical leave within the time specified. Please include any documentation supporting your reason.
> Supporting documentation includes, but is not limited to copy of a fax transmittal proving your form was faxed timely, documentation from a Health Care Provider regarding a processing delay, or documentation of any extenuating

---

[35] E-mail from Nathan van Rij, docket no. 29-23, dated July 24, 2015.

[36] Williams's Motion, *supra* note 1, at 5 ¶ 18; MetLife's Response to Subpoena, at electronic page ("ep") 6, docket no. 35-9, dated November 14, 2018; Print Claim Activity, docket no. 28-18, dated November 13, 2018; *see* Declaration of James R. Moss Jr. ¶ 5, docket no. 35-5, dated March 15, 2019. ETrade challenges the admissibility of MetLife's call logs on the basis of hearsay. "However, at the summary judgment stage, a party need not submit evidence in a *form* that would be admissible at trial as long as its *substance* would be admissible there." *O'Connor v. Williams*, 640 Fed. Appx 747, 750 (10th Cir. 2016) (internal quotation marks omitted). Here, ETrade challenges the form of the evidence, but not its substance. He does not suggest that the substance of the call logs would not be admissible in some other form—e.g., in the form of live testimony from Giroux or MetLife's representative. *See id.* Regardless, the contents of the call logs are not hearsay because they are statements offered against ETrade and were made by its agent, MetLife, on a matter within the scope of that relationship and while it existed. *See* FED. R. EVID. 801(d)(2)(D).

circumstances that prevented you from providing the requested information within the time specified.

Please have this information provided to MetLife within seven (7) calendar days from the date of this letter. Once this information is received we will complete our determination of your family and medical leave request. You will be notified of our decision under separate cover. Failure to provide this information in a timely manner will result in your leave request being delayed or denied in whole or in part.[37]

On or about August 3, Williams called and informed MetLife that the reason his HCPC had not been received within the time specified was that his "doctor was in India for a couple of weeks and could not fill out [the] form," and, "once he found out that the doctor was away, he brought the [paperwork] over to his Social Worker at the dialysis center to fill out[,] and it took some time before it was mailed back in."[38] Williams did not provide MetLife with any documentation to support this.

On August 5, ETrade made the decision to terminate Williams.[39] Before making this decision, Giroux "provided [ETrade with] information regarding the status of [Williams's] request for FMLA leave."[40] ETrade "notified [Williams] on August 7 that his employment was terminated effective August 7."[41] ETrade's letter to Williams regarding his "involuntary termination" does not provide any reason for his termination.[42]

Later that same day—August 7—MetLife sent Williams a letter "in reference to [his] request for family and medical leave beginning June 22, 2015."[43] In this letter, MetLife writes:

---

[37] Letter from MetLife, docket no. 29-25, dated July 29, 2015; *see* ETrade's Motion, *supra* note 2, at 11 ¶ 36.

[38] MetLife's Response to Subpoena, *supra* note 36, at ep 6-7; *see supra* note 36. Whether Williams's doctor had in fact been in India during the time in question is immaterial.

[39] Williams's Motion, *supra* note 1, at 6 ¶ 20; Discovery Response, *supra* note 6, at 6.

[40] Discovery Response, *supra* note 6, at 6.

[41] *Id.* at 5.

[42] Letter from ETrade, docket no. 29-9, dated August 6, 2015; *see* Williams's Motion, *supra* note 1, at 6 ¶ 21.

[43] Letter from MetLife, docket no. 29-27, dated August 7, 2015.

On July 27, 2015 we received a health care provider certification . . . certifying your need for leave for your own serious health condition. . . .

Please note, the requested information was received after the time specified.

How Absences Related To This Leave Are Handled:

Because the requested information was received after the time specified, any absence(s) taken for the period of July 20, 2015 through July 26, 2015 <u>will not</u> be approved for leave under the [FMLA], state family medical leave laws and/or your employer's family and medical leave program, as applicable.

However, you are approved for intermittent leave beginning June 22, 2015 through June 21, 2016. Provided you have leave time available under the [FMLA], state family medical leave laws and/or your employer's family and medical leave program, as applicable at the time you take your absences, all leave taken during this time period will be designated and counted as leave under the FMLA, state family medical leave laws and/or your employer's family and medical leave program, as applicable. We will notify you if your reported absences exhaust this available time.

. . . .

Based on the information that has been reported to us, the following number of hours, days or weeks have been counted against your FMLA, state family medical leave laws and/or your employer's family and medical leave program, if applicable leave entitlement:

| Absence Date | Hours Counted Against Your Leave Entitlement |
|---|---|
| June 22, 2015 | - 8 hours |
| June 24, 2015 | - 4 hours |
| June 29, 2015 | - 4 hours |
| July 6, 2015 | - 8 hours |
| July 8, 2015 | - 5 hours |
| July 10, 2015 | - 8 hours |
| July 13, 2015 | - 4 hours |
| July 15, 2015 | - 4 hours |
| July 17, 2015 | - 8 hours |
| July 29, 2015 | - 4 hours[44] |

On August 12, MetLife sent Williams a final letter "in reference to [his] request for family and medical leave beginning June 22, 2015."[45] This letter states:

We have evaluated your absence request and have determined that your request for intermittent leave is approved from June 22, 2015 through June 21, 2016. . . .

---

[44] *Id.*

[45] Letter from MetLife, docket no. 28-21, dated August 12, 2015.

> Provided you have leave time available under the [FMLA], state family medical leave laws and/or your employer's family and medical leave program, as applicable at the time you take your absences, all leave taken during this time period will be designated and counted as leave under the FMLA, state family medical leave laws and/or your employer's family and medical leave program, as applicable. We will notify you if your reported absences exhaust this available time.
>
> . . . .
>
> How Absences Related To This Leave Are Handled:
>
> Based on the information that has been reported to us, the following number of hours, days or weeks have been counted against your FMLA, state family medical leave laws and/or your employer's family and medical leave program, if applicable leave entitlement:
>
> | Absence Date | Hours Counted Against Your Leave Entitlement |
> |---|---|
> | August 3, 2015 | 8 hours |
> | August 5, 2015 | 5 hours[46] |

ETrade now contends that it terminated Williams because of "trading errors" and the following absences or tardies—none of which, according to ETrade, were protected or excused under the FMLA:[47]

| *Day* | *Date* | *Attendance* |
|---|---|---|
| Monday | 03/30/2015 | Tardy (33 mins.) |
| Tuesday | 03/31/2015 | Tardy (9 mins.) |
| Wednesday | 04/01/2015 | Tardy (3 mins.) |
| Thursday | 04/02/2015 | Tardy (5 mins.) |
| Monday | 04/06/2015 | Tardy (6 mins.) |
| Wednesday | 04/08/2015 | Tardy (5 mins.) |
| Thursday | 04/09/2015 | Tardy (2 mins.) |
| Monday | 04/13/2015 | Tardy (3 mins.) |
| Tuesday | 04/14/2015 | Tardy (1 min.) |
| Wednesday | 04/15/2015 | Tardy (4 mins.) |
| Thursday | 04/16/2015 | Tardy (3 mins.) |
| Friday | 04/17/2015 | Tardy (1 min.) |
| Friday | 04/24/2015 | Tardy (3 mins.) |
| Wednesday | 04/29/2015 | Tardy (1 min.) |
| Friday | 05/01/2015 | Tardy (2 mins.) |
| Monday | 05/04/2015 | Tardy (2 mins.) |
| Thursday | 05/07/2015 | Tardy (4 mins.) |

---

[46] *Id.*

[47] Williams's Motion, supra note 1, at 6 ¶ 24; ETrade's Response, *supra* note 1, at 10 ¶¶ 24-25; *see* ETrade's Motion, *supra* note 2, at 8, 12 ¶¶ 20, 38-40; Discovery Response, *supra* note 6, at 4-5, 8; Declaration of Courtney Nolde, at 3-4 ¶¶ 5, 7-8, [docket no. 35-2](), dated March 15, 2019.

| Day | Date | Attendance |
|---|---|---|
| Monday | 06/08/2015 | Absent |
| Monday | 06/15/2015 | Tardy (1 hr. 3 mins.) |
| Monday | 06/22/2015 | Absent |
| Wednesday | 06/24/2015 | Tardy (3 hrs. 55 mins.) |
| Thursday | 06/25/2015 | Tardy (15 mins.) |
| Monday | 06/29/2015 | Tardy (3 hrs. 54 mins.) |
| Monday | 07/06/2015 | Absent |
| Wednesday | 07/08/2015 | Tardy (3 hrs. 48 mins.) |
| Friday | 07/10/2015 | Tardy (4 hrs. 56 mins.) |
| Monday | 07/13/2015 | Tardy (3 hrs. 55 mins.) |
| Wednesday | 07/15/2015 | Tardy (3 hrs. 48 mins.) |
| Friday | 07/17/2015 | Absent |
| Monday | 07/20/2015 | Tardy (3 hrs. 54 mins.) |
| Wednesday | 07/29/2015 | Tardy (3 hrs. 53 mins.) |
| Monday | 08/03/2015 | Absent |
| Wednesday | 08/05/2015 | Tardy (4 hrs. 26 mins.) |

It is undisputed that Williams complied with ETrade's policy for reporting absences before taking any FMLA leave for a full or partial day.[48]

## DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[49] A dispute is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[50] A fact is "material" if "it is essential to the proper disposition of [a] claim."[51] In ruling on a motion for summary judgment, the evidence and all reasonable inferences are viewed in the light most favorable to the nonmoving party.[52]

---

[48] ETrade's Reply, *supra* note 2, at 13 ¶ 4.

[49] FED. R. CIV. P. 56(a).

[50] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[51] *Id.*

[52] *Id.*

Williams and ETrade each seek summary judgment on the issue of liability under the FMLA. The FMLA entitles "an eligible employee . . . to a total of 12 workweeks of leave during any 12-month period for," among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee."[53] Leave for this condition "may be taken intermittently or on a reduced leave schedule when medically necessary."[54] "It [is] unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA.[55] "Any employer who" does so is "liable to any eligible employee affected" for damages and "such equitable relief as may be appropriate."[56] "Any violations of the [FMLA] or [its corresponding] regulations constitute interfering with, restraining, or denying the exercise of rights provided by the [FMLA]."[57]

To establish a claim of interference under the FMLA, an employee must show (1) he was entitled to FMLA leave, (2) his employer took an adverse action that interfered with his right to take FMLA leave, and (3) the employer's action was related to the exercise or attempted exercise of his FMLA rights.[58] "If the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse

---

[53] 29 U.S.C. § 2612(a)(1)(D). "The term 'eligible employee' means an employee who has been employed—(i) for at least 12 months by the employer with respect to whom leave is requested . . . ; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." *Id.* § 2611(2)(A). "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." *Id.* § 2611(11)(B).

[54] *Id.* § 2612(b)(1). "The term 'reduced leave schedule' means a leave schedule that reduces the usual number of hours per workweek, or hours per workday, of an employee." *Id.* § 2611(9). "Intermittent leave means leave taken in separate periods of time due to a single illness or injury, rather than for one continuous period of time, and may include leave of periods from an hour or more to several weeks." 29 C.F.R. § 825.102.

[55] *Id.* § 2615(a)(1).

[56] *Id.* § 2617(a)(1); *see* 29 C.F.R. § 825.400(c).

[57] 29 C.F.R. § 825.220(b).

[58] *Dalpiaz v. Carbon County*, 760 F.3d 1126, 1132 (10th Cir. 2014).

13

decision was not related to the exercise or attempted exercise of [the employee's] FMLA rights."[59] However, an "indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery."[60]

## **Williams was entitled to FMLA leave.**

ETrade argues that Williams "was not entitled to FMLA protection because he failed to comply with the FMLA's recertification requirements."[61]

"In all cases, an employer may request a recertification of a medical condition every six months in connection with an absence by the employee."[62] "The employee must provide the requested recertification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts."[63] "If an employee fails to provide a recertification within a reasonable time under the particular facts and circumstances, then the employer may deny continuation of the FMLA leave protections until the employee produces a sufficient recertification."[64] "For example, if an employee has 15 days to provide a certification and does not provide the certification for 45 days without sufficient reason for the delay, the employer can deny FMLA protections for the 30-day period following the expiration of the 15-day time period, if the employee takes leave during

---

[59] *Id.* (citation and internal quotation marks omitted).

[60] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877-78 (10th Cir. 2004) (citation omitted).

[61] ETrade's Motion, *supra* note 2, at 16.

[62] 29 C.F.R. § 825.308(b).

[63] *Id.* § 825.308(d).

[64] *Id.* § 825.313(c).

14

such period."[65] "If the employee never produces the recertification, the leave is not FMLA leave."[66]

This is not a case where Williams never produced the certification ETrade requested. Rather, it is undisputed that Williams produced this information on July 27, 2015—nearly two weeks before he was terminated.[67] There is no evidence that this certification was insufficient— "vague, ambiguous, or non-responsive"[68]—or that ETrade ever advised him that it was insufficient.[69] Therefore, as a matter of law, Williams was entitled to FMLA leave from June 22 through *at least* July 14 and also from July 27 through August 7.[70]

### An adverse action of ETrade interfered with Williams's FMLA rights.

"To satisfy the second element of an interference claim—adverse action interfering with the right to take FMLA leave—the employee must show that she was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave."[71]

---

[65] *Id.* § 825.313(a).

[66] *Id.* § 825.313(c).

[67] *See supra* text accompanying note 37.

[68] 29 C.F.R. § 825.305(c).

[69] *Id.* ("The employer shall advise an employee whenever the employer finds a certification . . . insufficient, and shall state in writing what additional information is necessary to make the certification . . . sufficient. . . . A certification is considered insufficient if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive.").

[70] *See Toro v. Mastex Indus.*, 32 F. Supp. 2d 25, 29 (D. Mass. 1999) ("It is only when an employee completely fails to certify the medical need for his leave that his leave may be deemed unauthorized."); *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006) ("[E]ven if [employee] had failed to provide the certification in a timely fashion, [employer's] remedy under the regulations was . . . delayed leave, not termination.").

[71] *Dalpiaz,* 760 F.3d at 1132 (internal quotation marks and brackets omitted).

As a matter of law, ETrade's decision to terminate Williams was an adverse employment action. "[A]ny reasonable employee would [find] termination materially adverse."[72] And this action unquestionably interfered with Williams's right to take FMLA leave from June 22 through July 14, 2015; from July 27 through August 7, 2015; and during the remainder of the 12 weeks of leave guaranteed by the FMLA through June 21, 2016.

**ETrade's action was related to the exercise of Williams's FMLA rights.**

"An employer can defend against [an FMLA interference] claim . . . by showing that the employee would have been terminated anyway, i.e. regardless of the request for FMLA leave."[73] But ETrade cannot, as a matter of law, do so here because it is undisputed that ETrade's decision to terminate Williams was in fact related to the exercise of his FMLA rights. "A deprivation of these rights is a violation regardless of the employer's intent . . . ."[74] Simply put, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."[75] Thus, to prevail on his claim, Williams "need only prove . . . that [his] taking of FMLA-protected leave constituted a negative factor in the decision to terminate" him.[76]

---

[72] *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1171 (10th Cir. 2006).

[73] *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1227 (10th Cir. 2012).

[74] *Id.* at 1226-27; *see Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001) ("An employer who acts in good faith and without knowledge that its conduct violated the Act, therefore, is still liable for actual damages regardless of its intent."). Although ETrade asserts that it "had not received any indication that Williams' untimely FMLA recertification request would be approved when it made the decision" to terminate him, ETrade's Motion, *supra* note 2, at 13 ¶ 41, MetLife's knowledge on this subject is imputed to ETrade. *See Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 16, 61 P.3d 1009 ("[T]he knowledge of an agent concerning the business which he is transacting for his principal is to be imputed to his principal. A principal is imputed with an agent's knowledge of matters within the scope of his or her authority because . . . it is presumed that such knowledge will be disclosed to the principal." (internal quotation marks and brackets omitted)).

[75] 29 C.F.R. § 825.220(c).

[76] *Bachelder*, 259 F.3d at 1125.

"The question here is not whether [ETrade] had additional reasons for the discharge, but whether [Williams's] taking of . . . FMLA-protected leave was used as a negative factor in [his] discharge."[77] Williams's taking leave for the period in question was indeed used as a negative factor because ETrade admits that its decision to terminate Williams was based, at least in part, on his attendance on June 22, 24–25, and 29; July 6, 8, 10, and 13; and August 3 and 5—dates on which Williams's was entitled to protection under the FMLA.[78] "[T]he regulations clearly prohibit the use of FMLA-protected leave as a negative factor *at all*. Therefore no further inquiry on the question whether [ETrade] violated the statute in discharging [Williams] is necessary."[79]

## ORDER

THEREFORE, IT IS HEREBY ORDERED that Williams's motion[80] for summary judgment is GRANTED and ETrade's motion[81] is DENIED.

IT IS FURTHER HEREBY ORDERED AND ADJUDGED that ETrade's liability on Williams's FMLA interference claim is ESTABLISHED.

---

[77] *Id.* at 1131.

[78] *See supra* note 47 and accompanying text; *see also Bachelder*, 259 F.3d at 1125-26.

[79] *Bachelder*, 259 F.3d at 1131.

[80] Docket no. 28, filed February 15, 2019.

[81] Docket no. 29, filed February 15, 2019.

IT IS FURTHER HEREBY ORDERED that the parties shall meet and confer within 14 days regarding future scheduling of this case. A telephonic status and scheduling conference will be set to discuss a plan for resolution of issues remaining for trial.

Signed June 19, 2019.

BY THE COURT:

David Nuffer
United States District Judge